

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**ENTERED**
**06/26/2009**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No.  08-37521-H4-13 |
| DONALD G. DEPUGH, | § | |
| | § | **Chapter 13** |
| Debtor | § | |
| | § | |

## MEMORANDUM OPINION REGARDING: (I) DEBTOR'S OBJECTION TO LVNV FUNDING LLC'S PROOF OF CLAIM NUMBERS 12, 13, 14, AND 15; AND (II) MOTION OF LVNV FUNDING, LLC FOR LEAVE TO AMEND PROOF OF CLAIM NOS. 12 - 15 *NUNC PRO TUNC*
[Docket Nos. 37, 38, 39, 40, & 46]

### I. INTRODUCTION

In October of 2008, this Court issued a memorandum opinion in *In re Gilbreath* in which this Court took to task two unsecured creditors—LVNV Funding, LLC (LVNV) and eCast Settlement Corporation (eCast)—who filed woefully deficient proofs of claim with utter disregard for the requirements clearly set forth in Bankruptcy Rule 3001 requiring creditors to attach documentation in support of their claims.[1]  Following its ruling in *Gilbreath*, in order to prevent future violations of Bankruptcy Rule 3001 and to foster judicial efficiency and economy, on December 11, 2008, this Court issued a written notice and order in all of its Chapter 13 cases requiring creditors to seek leave of court or written consent of the debtor before amending a deficient proof of claim after the debtor has lodged a claim objection (the Notice and Order).  *See* Notice and Order that Federal Rule 15, as Made Applicable by Bankruptcy Rule 7015, Shall Apply Whenever an Objection to a Proof of Claim

---

[1] This Court issued a published memorandum opinion with respect to eCast which is available at 365 B.R. 356 (Bankr. S.D. Tex. 2008).  With respect to LVNV—the very same creditor who is the subject of this Memorandum Opinion—this Court issued written findings of fact and conclusions of law reiterating, almost verbatim, applicable portions of the published memorandum relating to eCast. [Case No. 08-32404, Docket No. 137.] Those findings of fact and conclusions of law are attached to this Memorandum Opinion as Exhibit A.

Is Lodged, *available at* http://www.txs.uscourts.gov/bankruptcy/judges/jb/notice.htm.

Despite this Court's rulings in *Gilbreath*, the requirement that creditors seek leave of court to amend proofs of claim to which objections have been lodged, and this Court's continuing efforts to have creditors to comply with Bankruptcy Rule 3001,[2] LVNV, through its same counsel of record, Mark Stromberg (Stromberg), filed four proofs of claim in the present case on March 31, 2009 with no documents attached to them. Stromberg apparently finally got around to reading this Court's ruling in *Gilbreath* sometime thereafter because LVNV amended all of its deficient proofs of claim in this case on May 5, 2009—twelve days after the bar date and twenty-eight days after the Debtor objected to LVNV's original proofs of claim. Following this action, Stromberg also apparently decided to check this Court's website for the first time since November of 2008. Much to his chagrin, no doubt, he discovered this Court's Notice and Order, because on May 8, 2009 he filed a motion for leave to amend *nunc pro tunc* LVNV's proofs of claim in this case.

Stromberg's failure to keep apprised of this Court's prior rulings—including those rendered against his own client in *Gilbreath*—and his abject disregard for this Court's Notice and Order, which was issued, in part, due to his client's prior violation of Bankruptcy Rule 3001, will, as in *Gilbreath*, preclude LVNV from pursuing its claims in the present case. For the reasons set forth below, LVNV's motion for leave to amend is denied and the Debtor's objections to LVNV's proofs of claim are sustained.

## II. FINDINGS OF FACT

---

[2] Since rendering its opinion in *Gilbreath*, this Court has issued another opinion, *In re North Bay General Hospital, Inc.*, 404 B.R. 443 (Bankr. S.D. Tex. 2009), which outlines the filing requirements for a proof of claim.

1.      On November 25, 2008, Donald G. DePugh (the Debtor) filed a voluntary Chapter 13

petition, initiating the above-referenced Chapter 13 case.  [Docket No. 1.]

2.      The last day for a non-government creditor to file a proof of claim in this Chapter 13 case

was April 23, 2009.  *See* [Docket No. 16.]

**LVNV's Original Proofs of Claim**

3.      On March 31, 2009, LVNV filed four proofs of claim—comprising claim numbers 12, 13,

14, and 15—in the Debtor's Chapter 13 case (Proofs of Claim 12, 13, 14, and 15,

respectively).

4.      Proof of Claim 12 consists of the official proof of claim form along with one attachment.

On the form, LVNV lists the amount of the claim as $19,060.36, lists the basis for the claim

as "MASTERCARD," and provides the last four digits of an account number—7880—by

which the Debtor may be identified.[3]  Additionally, on the form, LVNV checked the box

labeled, "Check this box if claim includes interest or other charges in addition to the

principal amount of claim," which instructs the claimant to "[a]ttach itemized statement of

interest or charges."  No such itemized statement is attached to Proof of Claim 12.  Rather,

LVNV attached a single document to Proof of Claim 12 prepared by Resurgent Capital

Services—LVNV's servicing company[4]—which contains the same information provided on

the form with respect to the claim, but which also represents that LVNV purchased the debt

---

[3] This account number ending in 7880 corresponds to an account listed on the Debtor's Schedule F held by "CBUSA/Sears," which the Debtor has scheduled as "disputed."  The amount of the disputed claim relating to this CBUSA/Sears account is listed on the Debtor's Schedule F as $18,467.91.  [Docket No. 1.]

[4] The document attached to Proof of Claim 12—and all of LVNV's other proofs of claim discussed below—states that "Resurgent Capital Services services this account on behalf of the current creditor."  Additionally, all of LVNV's original proofs of claim are signed by "Joyce Montjoy, Bankruptcy Recovery Manager of Resurgent Capital Services."

from "Citibank."

5.    Proof of Claim 13 also consists of the official proof of claim form along with one attachment. On the form, LVNV lists the amount of the claim as $13,278.68, lists the basis for the claim as "MASTERCARD," and provides the last four digits of an account number—4344—by which the Debtor may be identified.[5] Additionally, on the form, LVNV checked the box labeled, "Check this box if claim includes interest or other charges in addition to the principal amount of claim," which instructs the claimant to "[a]ttach itemized statement of interest or charges." No such itemized statement is attached to Proof of Claim 13. Rather, LVNV attached a single document to Proof of Claim 13 prepared by Resurgent Capital Services, which contains the same information provided on the form with respect to the claim, but which also represents that LVNV purchased the debt from "Citibank."

6.    Proof of Claim 14 also consists of the official proof of claim form along with one attachment. On the form, LVNV lists the amount of the claim as $20,756.99, lists the basis for the claim as "MASTERCARD," and provides the last four digits of an account number—0555—by which the Debtor may be identified.[6] Additionally, on the form, LVNV checked the box labeled, "Check this box if claim includes interest or other charges in addition to the principal amount of claim," which instructs the claimant to "[a]ttach itemized statement of interest or charges." No such itemized statement is attached to Proof of Claim

---

[5] This account number ending in 4344 corresponds to an account listed on the Debtor's Schedule F held by "Citibank," which the Debtor has scheduled as "disputed." The amount of the disputed claim relating to this Citibank account is listed on the Debtor's Schedule F as $9,946.00. [Docket No. 1.]

[6] This account number ending in 0555 corresponds to an account listed on the Debtor's Schedule F held by "At&t Universal/Citibank," which the Debtor has scheduled as "disputed." The amount of the disputed claim relating to this At&t Universal/Citibank account is listed on the Debtor's Schedule F as $19,549.90. [Docket No. 1.]

14. Rather, LVNV attached a single document to Proof of Claim 14 prepared by Resurgent Capital Services, which contains the same information provided on the form with respect to the claim, but which also represents that LVNV purchased the debt from "Citibank."

7. Proof of Claim 15 also consists of the official proof of claim form along with one attachment. On the form, LVNV lists the amount of the claim as $2,807.49, lists the basis for the claim as "UNSECURED CHARGE OFF," and provides the last four digits of an account number—5703—by which the Debtor may be identified.[7] Additionally, on the form, LVNV checked the box labeled, "Check this box if claim includes interest or other charges in addition to the principal amount of claim," which instructs the claimant to "[a]ttach itemized statement of interest or charges." No such itemized statement is attached to Proof of Claim 15. Rather, LVNV attached a single document to Proof of Claim 15 prepared by Resurgent Capital Services, which contains the same information provided on the form with respect to the claim, but which also represents that LVNV purchased the debt from "Citibank" or "GOODYEAR."

8. On April 7, 2009, the Debtor filed objections to all four of LVNV's original proofs of claim (the Objections). [Docket Nos. 37-40.] The Debtor objects to Claims 12, 13, 14, and 15 on the following grounds: (1) LVNV failed to attach documentation to prove the existence of its purported claims; (2) LVNV failed to comply with Federal Rule of Bankruptcy Procedure 3001 (Bankruptcy Rule 3001); and (3) the Debtor denies that he has any liability to LVNV. In support of this third contention, the Debtor has attached an affidavit to the Objections, in

---

[7] This account number ending in 5703 corresponds to an account listed on the Debtor's Schedule F held by "Goodyear/CBUSA NA/HSB," which the Debtor has scheduled as "disputed." The amount of the disputed claim relating to this Goodyear/CBUSA NA/HSB account is listed on the Debtor's Schedule F as $2,029.00. [Docket No. 1.]

which he swears that he does not owe any money to LVNV and that there is no proof of the debt, the transfer, or the proper amount owed. The Debtor requests that Claims 12, 13, 14, and 15 be disallowed.

9.    On April 13, 2009, LVNV filed a Response to the Objections (the Response). [Docket No. 41.] In the Response, LVNV asserts that proofs of claim that fail to comply with Bankruptcy Rule 3001 are not automatically disallowed. LVNV also argues that the Debtor has not raised a "substantive" objection pursuant to 11 U.S.C. § 502(b) and that, as a result, the Objections should be overruled and LVNV's claims should be allowed. In support of its position, LVNV cites the following cases in the Response: *In re Taylor*, 289 B.R. 379 (Bankr. N.D. Ind. 2003) (for the proposition that claim objections must be couched in one of the nine statutory grounds enumerated in § 502(b)); *In re Cluff*, 313 B.R. 323 (Bankr. D. Utah 2004) (for the proposition that a claim objection based solely on a creditor's failure to comply with Bankruptcy Rule 3001 is invalid); *In re Burnett*, 306 B.R. 313 (B.A.P. 9th Cir. 2004) (for the proposition that a claim should not be disallowed solely based on a creditor's failure to comply with Bankruptcy Rule 3001); *In re Kemmer*, 315 B.R. 706 (Bankr. E.D. Tenn. 2004) (same); *Szatkowski v. Meade Tool & Die Co.*, 164 F.2d 228 (6th Cir. 1947) (for the proposition that amendments to proofs of claim should be freely allowed); *In re G.L. Miller & Co.*, 45 F.2d 115 (2d Cir. 1930) (same); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) (for the proposition that claims should not be dismissed without giving the claimant an opportunity to amend); and *In re Armstrong*, 320 B.R. 97 (Bankr. N.D. Tex. 2005) (for the proposition that only substantive objections based on § 502(b) provide a basis for disallowance). Notably, LVNV does not cite this Court's

6

published opinion in *Gilbreath* or the published opinion of the Honorable Gray H. Miller, United States District Judge for the Southern District of Texas, in *ECast Settlement Corp. v. Tran (In re Tran)*, 369 B.R. 312 (S.D. Tex. 2007), which affirmed a ruling by Bankruptcy Judge Karen K. Brown, and which is binding on this Court.[8]

**LVNV's Amended Proofs of Claim**

10.     On May 5, 2009—twelve days after the bar date and twenty-eight days after the Debtor filed the Objections—LVNV amended all four of its proofs of claim to include documentation in support of each claim.   The amount of the claim listed on each amended proof of claim is the same as the amount sought in LVNV's original proofs of claim.  However, on the proof of claim form for each amended proof of claim, LVNV did not check the box marked, "Check this box if claim includes interest or other charges in addition to the principal amount of claim." Additionally, LVNV attached documents in support of each amended proof of claim.

11.     LVNV attached the following documents to its Amended Proof of Claim 12:

a.     A "Bill of Sale, Assignment and Assumption Agreement" between Citibank USA, National Association (referred to therein as "the Bank") and Sherman Originator, LLC (referred to therein as "Buyer") dated March 28, 2007, which contains the following language:

---

[8]   This Court agrees with the assessment of the Bankruptcy Court for the Northern District of Texas that decisions by the district court are binding on the bankruptcy courts of that district under the federal hierarchical judicial structure. *Rand Energy Co. v. Strata Directional Tech., Inc. (In re Rand Energy Co.)*, 259 B.R. 274, 276 (Bankr. N.D. Tex. 2001); *see also In re Windmill Farms, Inc.*, 70 B.R. 618, 621-22 (B.A.P. 9th Cir. 1987), *rev'd on other grounds*, 841 F.2d 1467 (9th Cir. 1988); *Johnson-Allen v. Lomas and Nettleton Co. (In re Johnson-Allen)*, 67 B.R. 968, 972-73 (Bankr. E.D. Pa. 1986); *In re Windsor Commc'ns Group, Inc.*, 67 B.R. 692, 698-99 (Bankr. E.D. Pa. 1986); *In re Moisson*, 51 B.R. 227, 229 (Bankr. E.D. Mich. 1985); *and see generally* Daniel J. Bussel, Power, Authority, and Precedent in Interpreting the Bankruptcy Code, 41 UCLA L. Rev. 1063 (1994).

> For value received and subject to the terms and conditions of the Purchase and Sale Agreement dated March 28, 2007, between Buyer and the Bank (the "Agreement"), the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts described in Section 1.2 of the Agreement.

b.   A "Sale and Assignment" dated March 31, 2007, which sets forth the following:

> Sherman Originator LLC ("Originator") . . . hereby transfers, sells, assigns, conveys, grants and delivers to LVNV Funding LLC ("Company"), in accordance with the provisions of the Sale Agreement dated as of April 29, 2005, between Originator and Company (the "Agreement"), the Receivable Assets (as defined in the Agreement) identified on the Receivable File dated 3/31/07 that is hereby delivered to Company and accompanies this Sale and Assignment.

c.   A number of invoices from 2006 showing various purchases made by the Debtor charged to his Sears credit card with an account number ending in 7880.  None of these invoices indicates an outstanding account balance of $19,060.36—the amount of LVNV's claim listed in Proof of Claim 12.

12.   LVNV attached the following documents to its Amended Proof of Claim 13:

a.   A "Bill of Sale, Assignment and Assumption Agreement" between Citibank (South Dakota), National Association (referred to therein as "the Bank") and Sherman Originator, LLC (referred to therein as "Buyer") dated June 26, 2007, which contains the following language:

> For value received and subject to the terms and conditions of the Purchase and Sale Agreement dated June 26, 2007, between Buyer and the Bank (the "Agreement"), the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts described in Section 1.2 of the Agreement.

8

b.   A "Sale and Assignment" dated June 30, 2007, which sets forth the following:

> Sherman Originator LLC ("Originator") . . . hereby transfers, sells, assigns, conveys, grants and delivers to LVNV Funding LLC ("Company"), in accordance with the provisions of the Sale Agreement dated as of April 29, 2005, between Originator and Company (the "Agreement"), the Receivable Assets (as defined in the Agreement) identified on the Receivable File dated 6/30/07 that is hereby delivered to Company and accompanies this Sale and Assignment.

c.   A number of invoices from 2006 showing various charges to the Debtor's "Citi Dividend Platinum Select" credit card with an account number ending in 4344. None of these invoices indicates an outstanding account balance of $13,278.68—the amount of LVNV's claim listed in Proof of Claim 13.

13.   LVNV attached the following documents to its Amended Proof of Claim 14:

a.   A "Bill of Sale, Assignment and Assumption Agreement" between Citibank (South Dakota), National Association (referred to therein as "the Bank") and Sherman Originator, LLC (referred to therein as "Buyer") dated June 26, 2007, which contains the following language:

> For value received and subject to the terms and conditions of the Purchase and Sale Agreement dated June 26, 2007, between Buyer and the Bank (the "Agreement"), the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts described in Section 1.2 of the Agreement.

b.   A "Sale and Assignment" dated June 30, 2007, which sets forth the following:

> Sherman Originator LLC ("Originator") . . . hereby transfers, sells, assigns, conveys, grants and delivers to LVNV Funding LLC ("Company"), in accordance with the provisions of the Sale Agreement dated as of April 29, 2005, between Originator and Company (the "Agreement"), the Receivable Assets (as defined in the

9

Agreement) identified on the Receivable File dated 6/30/07 that is hereby delivered to Company and accompanies this Sale and Assignment.

c.    A number of invoices from 2005 and 2006 showing various charges to the Debtor's "AT&T Universal Platinum" credit card with an account number ending in 0555. None of these invoices indicates an outstanding account balance of $20,756.99—the amount of LVNV's claim listed in Proof of Claim 14.

14.    LVNV attached the following documents to its Amended Proof of Claim 15:

a.    A "Bill of Sale, Assignment and Assumption Agreement" between Citibank (South Dakota), National Association (referred to therein as "the Bank") and Sherman Originator, LLC (referred to therein as "Buyer") dated June 26, 2007, which contains the following language:

> For value received and subject to the terms and conditions of the Purchase and Sale Agreement dated June 26, 2007, between Buyer and the Bank (the "Agreement"), the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts described in Section 1.2 of the Agreement.

b.    A "Sale and Assignment" dated June 30, 2007, which sets forth the following:

> Sherman Originator LLC ("Originator") . . . hereby transfers, sells, assigns, conveys, grants and delivers to LVNV Funding LLC ("Company"), in accordance with the provisions of the Sale Agreement dated as of April 29, 2005, between Originator and Company (the "Agreement"), the Receivable Assets (as defined in the Agreement) identified on the Receivable File dated 6/30/07 that is hereby delivered to Company and accompanies this Sale and Assignment.

c.    A number of invoices from 2005 and 2006 showing various charges to the Debtor's Goodyear credit card with an account number ending in 5703.  None of these

invoices indicates an outstanding account balance of $2,807.49—the amount of LVNV's claim listed in Proof of Claim 15.

15. On May 8, 2009, LVNV filed a Motion of LVNV Funding, LLC for Leave to Amend Proof of Claim Nos. 12 - 15 *Nunc Pro Tunc* and Brief in Support Thereof (the Motion for Leave). [Docket No. 46.]

**The Claim Objection Hearing**

16. On May 21, 2009, this Court held a hearing on the Debtor's Objections and LVNV's Motion for Leave. Stromberg, counsel of record for LVNV, testified on behalf of LVNV. No other representative of LVNV appeared, including Joyce Montjoy, the "Bankruptcy Recovery Manager" of Resurgent Capital Services—LVNV's servicing company—who prepared and signed Proofs of Claim 12 through 15 on behalf of LVNV. Stromberg introduced into evidence without objection LVNV's Amended Proofs of Claim 12 through 13 and the documents attached thereto. Additionally, Stromberg stated that he did not become aware of this Court's Notice and Order until after he filed the amended proofs of claim, but that he was fully aware of this Court's opinion in *Gilbreath*. Stromberg also conceded that he only attempted to obtain the documents attached to LVNV's amended proofs of claim after the Debtor lodged the Objections. When attempting to show that the credit card accounts comprising LVNV's claims were among the "Accounts" and "Receivable Assets" described in the documents attached to LVNV's amended proofs of claim, Stromberg conceded that he forgot to include any such evidence in his exhibit booklet. At the conclusion of the hearing, this Court issued oral findings of fact and conclusions of law and ordered that the Motion for Leave was denied and, additionally, ordered LVNV to pay $750.00 to compensate

11

the Debtor's counsel for the attorney's fees that he incurred in filing the Objections and appearing at the hearing, for which Stromberg was unprepared.

### III. CONCLUSIONS OF LAW

**A.   Jurisdiction and Venue**

The Court has jurisdiction over these matters pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This claim objection proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (O). Additionally, this proceeding is a core proceeding under the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case."); *In re Ginther Trusts*, No. 06-3556, 2006 WL 3805670, at *19 (Bankr. S.D. Tex. Dec. 22, 2006) (holding that a matter may constitute a core proceeding under 28 U.S.C. § 157(b)(2) "even though the laundry list of core proceedings under § 157(b)(2) does not specifically name this particular circumstance"). Venue is proper pursuant to 28 U.S.C. § 1408(1).

**B.   Standard for Ruling on Claim Objections**

Allowance of claims is governed by 11 U.S.C. § 502. Section 502(a) provides that a proof of claim filed under § 501 is deemed allowed unless a party-in-interest objects. Section 502(b) provides that once a claim objection is lodged, the Court, after notice and a hearing, shall determine the amount of the claim as of the petition date and "shall allow such claim in such amount" unless the claim falls under one of the nine statutory grounds for disallowance listed in § 502(b)(1)-(9).

The statutory grounds for disallowance most applicable to the dispute at bar are § 502(b)(1) and (9). Under § 502(b)(1), a claim must be disallowed if "such claim is unenforceable against the

debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." Additionally, under § 502(b)(9), a claim must be disallowed if "proof of such claim is not timely filed" with narrow exceptions carved out for tardy claims filed pursuant to 11 U.S.C. § 726(a)(1)-(3), or in accordance with the Bankruptcy Rules.

The form and content requirements for proofs of claim are set forth in Federal Rule of Bankruptcy Procedure 3001 (Bankruptcy Rule 3001). Bankruptcy Rule 3001(a) mandates that "[a] proof of claim shall conform substantially to the appropriate Official Form"—that is, Official Form 10 (Form 10). Additionally, Bankruptcy Rule 9009 states that the Official Forms "shall be observed." Fed. R. Bankr. P. 9009. Paragraph 7 of Form 10 requires the claimant to "[a]ttach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements or running accounts, contracts, judgments, mortgages, and security agreements" or a summary of such documents. Paragraph 7 of Form 10 also requires that "[i]f the documents are not available, please explain." Bankruptcy Rule 3001(c) requires that, when a claim is based on a writing, "the original or a duplicate [of the written document] shall be filed with the proof of claim"; or, if the writing has been lost or destroyed, "a statement of the circumstances of the loss or destruction shall be filed with the claim."

A proof of claim that comports with the requirements set forth in Bankruptcy Rule 3001, "shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). Three Bankruptcy Judges for the Northern District of Texas issued a joint opinion in *In re Armstrong* explaining the sort of documentation that a claimant must produce in order to avail its claims of prima facie validity pursuant to Bankruptcy Rule 3001(f). 320 B.R. 97 (Bankr. N.D. Tex. 2005). A credit card or consumer account creditor, like LVNV in this case, must provide "an

13

account statement containing the debtor's name, account number, the prepetition account balance, interest rate, and a breakdown of the interest charges, finance charges and other fees that make up the balance of the debt, or attach enough monthly statements so that this information can be easily determined." *Id.* at 106; *see also In re Relford*, 323 B.R. 669, 674 (Bankr. S.D. Ind. 2004) ("[A] credit card or consumer credit claim is based on both the credit card agreement and proof of the credit card's actual use. Accordingly, a claim for such debt must include the parties' credit agreement (an any amendments thereto), as well as evidence regarding the debtor's use of the credit card or consumer account.). Additionally, a claimant whose claims have been assigned—also like LVNV in this case—must "document its ownership of the claim" and produce "a signed copy of the assignment and sufficient information to identify the original credit card account." *Id.* (quoting *In re Hughes*, 313 B.R. 205, 212 (Bankr. E.D. Mich. 2004)).

In *Gilbreath*, this Court described the burden-shifting process that § 502 and Bankruptcy Rule 3001 create during a proof of claim dispute. *In re Gilbreath*, 395 B.R at 361-65. If, for example, an unsecured creditor files a proof of claim that fully complies with Bankruptcy Rule 3001, that claim is deemed prima facie valid and, if the debtor objects to that claim, he or she must produce evidence sufficient to rebut the presumption of validity and establish that the claim should be disallowed pursuant to § 502(b). If, however, an unsecured creditor files a proof of claim that fails to comply with Bankruptcy Rule 3001, the Debtor has no evidentiary burden to overcome when

lodging a claim objection pursuant to § 502(b),[9] at which point the burden shifts back to the claimant to prove the underlying validity of its claim by a preponderance of the evidence in order to have its claim allowed.  *See* 11 U.S.C. § 502; *In re O'Connor*, 153 F.3d 258, 260-61 (5th Cir. 1998); *In re Fid. Holding Co.*, 837 F.2d 696, 698 (5th Cir. 1988).  This Court rendered its decision in *Gilbreath*—at least in part—to help curb the growing trend of creditors filing seriously deficient proofs of claim in the name of frugality, only amending those claims to include the proper documentation after the debtor lodges an objection and the Court sets the matter for a hearing.

This Court believes that the Supreme Court created Bankruptcy Rule 3001 for a reason[10]—so that debtors and other parties in interest can see and read the documents upon which claims are based in order to make an *initial* assessment of their validity.  This Court does not believe that the Supreme Court contemplated that creditors could ignore Bankruptcy Rule 3001's requirements unless and until a debtor complains and then cry "no harm, no foul" by producing documents that should have been produced initially.  This latter scenario subverts the fundamental process by which the American legal system is based—that a claimant must come forward with at least some evidence that its claims are valid before collecting on their claims.  *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15,

_____

[9] Some courts have suggested that even if a creditor's proof of claim fails to comply with Bankruptcy Rule 3001, the debtor's objection must still produce "some evidence which tends to 'meet, overcome, or at least equalize' the statements on the proof of claim." *In re Habiballa*, 337 B.R. 911, 915 (Bankr. E.D. Wis. 2006) (quoting *In re Cluff*, 313 B.R. 323, 338 (Bankr. D. Utah 2004)).  These courts essentially reason that because a proof of claim is signed under penalty of up to $500,000.00 or five years in prison, even a skeletal proof of claim should be afforded some sort of evidentiary weight.  *Id.*

Despite these opinions, this Court is bound to follow the District Court's decision in *Tran, see supra* note 8, which holds that a debtor "has no evidentiary burden to overcome" in objecting to a claim that is not prima facie valid.  *In re Tran*, 369 B.R. at 318.  Additionally, even if this Court were to adopt the reasoning from the bankruptcy courts mentioned above, because the Debtor attached a sworn affidavit to the Objection, he has taken sufficient action to "meet, overcome, or at least equalize" the statements made in LVNV's original proofs of claim.  *In re Habiballa*, 337 B.R. at 915.

[10] The Federal Rules of Bankruptcy Procedure are promulgated by the Supreme Court of the United States.

21 (2000) (recognizing that "the burden of proof is an essential element of the claim itself," and that "one who asserts a claim [has] the burden of proof that normally comes with it").  Though efficiency and the speedy resolution of the claims objection process is important to keep bankruptcy cases running smoothly, such efficiency should not come at the expense of accuracy, fairness, and fundamental evidentiary requirements.  Every penny that goes to pay a creditor's allowed claim necessarily diminishes the pool of funds available to pay other creditors while, at the same time, reducing the probability that the Chapter 13 debtor will be able to propose, and make payments on, a feasible plan of reorganization.  Creditors are provided ample leeway to have their claims presumed valid—and to shift the evidentiary burden to the debtor—if they simply comply with Bankruptcy Rule 3001 the *first* time they file a proof of claim.

In order to ensure compliance with Bankruptcy Rule 3001 and to give effect to the burden-shifting framework described above, this Court—in accordance with Bankruptcy Rule 9014 and this Court's equitable power under 11 U.S.C. § 105(a)—issued a Notice and Order that Bankruptcy Rule 7015 shall apply in all Chapter 13 cases in this Court after a claim objection is filed.[11]  Bankruptcy Rule 7015 incorporates Federal Rule of Civil Procedure 15, which requires claimants to obtain "the opposing party's written consent or the court's leave" to amend a claim after being served with a response—in this case, a written objection to a proof of claim.  Fed. R. Civ. P. 15(a)(2).  As this

---

[11] Bankruptcy Rule 9014 allows a bankruptcy court to apply any of the Bankruptcy Rules in Part VII to a contested matter "at any stage in a particular matter."  Fed. R. Bankr. P. 9014.  Section 105(a) of the Bankruptcy Code, which allows a bankruptcy court to issue any order "necessary or appropriate to carry out the provisions of" the Bankruptcy Code, has also been frequently applied to allow or disallow amendments to proofs of claim as a matter of equity.  *See, e.g.*, *United States v. Johnston*, 267 B.R. 717, 721 (N.D. Tex. 2001) (concluding that "the [bankruptcy] court's power to prevent abuse of process includes bending the time requirements . . . to permit amendments" (internal marks omitted)); *In re Eden*, 141 B.R. 121, 123-24 (Bankr. W.D. Tex. 1992) (recognizing that "many bankruptcy courts—for equitable reasons—do permit amendments to proofs of claim, even past the bar date").  The Seventh Circuit has also explained that "[Bankruptcy] Rule 7015 is not . . . the only possible authority for amendment.  Another possible basis is the bankruptcy court's broad equitable jurisdiction." *In re Unroe*, 937 F.2d 346, 349 (7th Cir. 1991).

Court pointed out in *Gilbreath*, "most bankruptcy courts have recognized that '[t]he trend of the cases appear to apply Rule 7015 to contested matters'" (here, the Debtor's Objections initiated a contested matter). *In re Gilbreath*, 395 B.R. at 366 (quoting *In re MK Lombard Group I, Ltd.*, 301 B.R. 812, 816 (Bankr. E.D. Pa. 2003) and citing *In re Stavriotis*, 977 F.2d 1202, 1204 (7th Cir. 1992) (noting that Bankruptcy Rule 9014 permits extension of Rule 7015 to contested matters); *In re Best Refrigerated Express, Inc.*, 192 B.R. 503, 506 (Bankr. D. Neb. 1996) (applying Rule 7015 through Rule 9014 to allow amendment to a filed proof of claim to relate back); *Enjet, Inc. v. Mar. Challenge Corp. (In re Enjet, Inc.)*, 220 B.R. 312, 314 (E.D. La. 1998) (noting that "numerous courts have applied Rule 7015 and Rule 15(c) explicitly or by analogy in non-adversary [bankruptcy] proceedings"); *In re Brown*, 159 B.R. 710, 714 (Bankr. D.N.J. 1993) (noting that Rule 15's "standards for allowing amendments to pleadings in adversary proceedings . . . also apply to amendments to a proof of claim"); *In re Blue Diamond Coal Co.*, 147 B.R. 720, 725 (Bankr. E.D. Tenn. 1992) (extending Rule 9014 to apply Rule 7015 to contested matters); *In re Enron Corp.*, 298 B.R. 513, 521-22 (Bankr. S.D.N.Y. 2003) (invoking Rule 9014 to apply Rule 7015); 10 Collier on Bankruptcy ¶ 7015.02 n. 1 (Matthew Bender 15th ed. Rev.)).

Having described the applicable legal standard for ruling on claim objections and amendments to contested proofs of claim, the Court will now apply these standards to the dispute at bar.

Based on the standard articulated above, LVNV's original proofs of claim fall far short of compliance with Bankruptcy Rule 3001. LVNV's four original proofs of claim are nothing more than bare allegations that the Debtor owes LVNV money based on some "MASTERCARD" or "UNSECURED CHARGE OFF" with respect to certain accounts purchased from "Citibank" or

"GOODYEAR." [Findings of Fact No. 4-7.] It was incumbent on LVNV to produce documentation

supporting its claim and—because it is not the original account holder—to document ownership of

its claims. *See In re Armstrong*, 320 B.R. at 106. The allegations in LVNV's original proofs of

claim do not come within hailing distance of accomplishing either. LVNV's original proofs of claim

are therefore not entitled to prima facie validity and, unless this Court grants the Motion for Leave

and the documents attached to LVNV's amended proofs of claim are sufficient to clothe LVNV's

claims with a presumption of validity, the Debtor's Objection is sufficient to shift the burden back

to LVNV to prove the validity of its claims by a preponderance of the evidence.

Thus, before this Court addresses the validity of LVNV's claims, it must first address the

threshold question of whether the Motion for Leave should be granted.

## C.    LVNV's Motion to Amend

Because LVNV—twelve days after the bar date—has attempted to amend its proofs of claim

after the Debtor lodged the Objection, [Finding of Fact No. 10], LVNV was required, pursuant to

the Notice and Order, to obtain this Court's leave or the Debtor's written consent before amending

its proofs of claim. Fed. R. Civ. P. (a)(2). Rule 15(a)(2)—as applicable to this contested matter

through Bankruptcy Rule 7015 and the Notice and Order—provides that the Court should freely give

leave to amend where justice so requires. Fed. R. Civ. P. 15(b)(1); *Foman v. Davis*, 371 U.S. 178,

182 (1962); *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 390 (5th Cir. 2009). In order to

determine whether "justice so requires," a court may consider a variety of factors, such as (1) undue

delay, (2) bad faith or dilatory motive on the part of the movant, (3) repeated failure to cure

deficiencies by amendments previously allowed, (4) undue prejudice to the opposing party by virtue

of allowance of the amendment, and (5) futility of the amendment. *Foman*, 371 U.S .at 182; *Torch*

18

*Liquidating Trust*, 561 F.3d at 391.  The Fifth Circuit has held that decisions concerning motions to amend are entrusted to the sound discretion of the trial court.  *See Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998).

This Court may deny LVNV's request for leave to amend if it finds that any *one* of these factors is present.  *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998) (considering only the "futility" factor when a different factor was considered by the district court).  The Court will address each equitable factor in turn.

### 1.    Undue Delay

The controlling question for this factor is whether the delay in filing the amendment amounts to *undue* delay.  Black's Law Dictionary Defines "undue" as "excessive or unwarranted."  Black's Law Dictionary 1529 (7th ed. 1999).  Thus, delay amounts to "undue delay" where a party has waited an unreasonably long period of time to amend, or where the delay in filing the amendment is unwarranted. *See, e.g.*, *Chitimacha Tribe of La. v. Harry L. Laws Co.*, 690 F.2d 1157, 1164 (5th Cir. 1982) (affirming district court's determination that request for leave to amend should be denied when the party seeking to amend had access to the information beforehand and the information had not "only recently come to light").  The Fifth Circuit has held that "in exercising its discretion to deny leave to amend a complaint, a trial court may properly consider (1) an 'unexplained delay' following an original complaint, and (2) whether the facts underlying the amended complaint were known to the party when the original complaint was filed." *Southmark Corp. v. Schulte Roth & Zabel (In re Southmark Corp.)*, 88 F.3d 311, 316 (5th Cir. 1996) (quoting *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1025 (5th Cir. 1981)).

Following its decision in *Southmark*, the Fifth Circuit has addressed the issue of undue delay

in three opinions with facts comparable to the case at bar. In *Parish v. Fraizier*, the Fifth Circuit

affirmed the district court's conclusion that the plaintiff's delay in filing an amended complaint

constituted "undue delay" where the delay "could have been avoided by due diligence, as plaintiff

could have raised the additional claims in her [original] complaint or at least sought to amend at an

earlier time." 195 F.3d 761, 763 (5th Cir. 1999). The Fifth Circuit determined that, under such

circumstances, the party seeking to amend "bears the burden of showing that delay was due to

oversight, inadvertence or excusable neglect." *Id.* Because the plaintiff in *Parish* made no such

showing, the district court's refusal to grant leave to amend was upheld. The Fifth Circuit came to

a similar conclusion in *Smith v. EMC Corp.*, where it upheld the district court's refusal to grant a

plaintiff leave to amend where the plaintiff could have included the claim added to the amended

complaint in the original complaint, but chose not to do so as part of "his own litigation strategy."

393 F.3d 590, 596 (5th Cir. 2004). Because the plaintiff could have included the amended claim,

his delay in filing his amended complaint constituted undue delay. *Id.* at 595-96. Finally, in *Jones

v. Robinson Property Group, L.P.*, the Fifth Circuit affirmed the district court's denial of the

plaintiff's motion for leave to amend where the evidence giving rise to the newly asserted claim was

available "long before" he amended his complaint to include that claim. 427 F.3d 987, 995 (5th Cir.

2005). The court in *Jones* also reiterated its prior determination that the party seeking leave to

amend "bears the burden of showing that [the] delay was due to oversight, inadvertence, or excusable

neglect." *Id.* at 994-95.

Because LVNV attempted to amend its proofs of claim twelve days after the bar date,

[Finding of Fact No. 10], there is no question that it bears the burden of providing some tenable

excuse for failing to timely amend. Here, LVNV filed its Motion for Leave nearly a month after the

Debtor objected to its proofs of claim and only after it had already filed its amendments. [Findings of Fact No. 5 & 6.] LVNV cannot reasonably argue that these documents were unavailable until after the bar date because the very same documents were attached to LVNV's Response, which was filed *ten days before* the bar date. [Findings of Fact No. 2 & 9.] It is also noteworthy that LVNV was able to obtain supporting documents and attach them to its Response a mere *five days after* the Debtor filed his Objections. [Findings of Fact No. 8 & 9.] It appears that these documents—all of which should have been attached to LVNV's original proofs of claim—were only a phone call away. Why that phone call was not made at the time LVNV filed its original proofs of claim, or even some reasonable time thereafter, this Court will not venture to guess. It is enough to conclude that LVNV had access to—or could have easily acquired—the documents attached to its amended proofs of claim long before it filed its untimely amendments to its proofs of claim on May 5, 2009, but, for some undisclosed reason, failed to do so. Indeed, LVNV called no witnesses at the May 21, 2009 hearing to explain the delay in obtaining the documents that it eventually attached to its amended proof of claim. Additionally, LVNV's counsel of record, Stromberg, offered no explanation for why these documents were not initially attached.

As discussed above, the Fifth Circuit has upheld a trial court's denial of a motion for leave to amend where counsel's failure to include additional claims—or, in this case, documents—originally was due, in part, to "his own litigation strategy." *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004). As LVNV's counsel of record, Stromberg's "litigation strategy" apparently involves disregarding applicable precedent and rulings against his clients in prior cases. This Court has already discussed Stromberg's failure to comply with Bankruptcy Rule 3001 despite this Court's ruling against LVNV in *Gilbreath* and despite this Court's Notice and Order. However,

Stromberg's failures go much further back and beyond this District.

In August of 2006, following the joint opinion of three Bankruptcy Judges for the Northern District of Texas in *In re Armstrong*, 320 B.R. 97 (2005), Bankruptcy Judge Harlin Hale, one of the co-authors of the joint opinion, issued a second published opinion specifically applicable to eCast—for whom Stromberg was counsel of record. *In re Armstrong*, 347 B.R. 581 (Bankr. N.D. Tex. 2006). In that opinion, Judge Hale disallowed one of eCast's claims because eCast had failed to provide supporting documentation sufficient to establish prima facie validity or to overcome the debtor's claim objection.[12] *Id.* at 585. Judge Hale's comments with respect to Stromberg are particularly noteworthy:

---

[12] Judge Hale adopted the reasoning of Bankruptcy Judge Barbara Houser—another co-author of the joint *Armstrong* opinion—in *In re Rochester*, No. 03-32184-BJH-13, 2005 WL 3670877 (Bankr. N.D. Tex. May 24, 2005), which set forth three scenarios under which assignee claimants may (or may not) clothe their claims with prima facie validity. Under the first scenario, the assignee claimant produces documentation of a "blanket assignment" of accounts to the assignee claimant from a creditor listed on the debtor's schedules along with copies of the underlying account documents. Under the second scenario, the assignee claimant produces documentation of a blanket assignment of accounts to the assignee creditor from some other creditor not listed on the debtor's schedules, but also produces additional documents sufficient to link the assignee claimant with an entity listed on the debtor's schedules. Under the third scenario, the assignee claimant produces documentation of a blanket assignment of accounts to the assignee creditor from another creditor not listed on the debtor's schedules, but does not produce sufficient documentation to link the assignee creditor with a creditor listed on the debtor's schedules. Under scenarios one and two, the assignee creditor has produced sufficient documentation to give rise to a presumption that the assignee claimant is the present owner and holder of the debtor's accounts. Under the third scenario, the assignee creditor has not. *See In re Rochester*, 2005 WL 3670877, at *5-8.

In Judge Hale's *Armstrong* case, one of the claims of eCast, for whom Stromberg was counsel of record, did not enjoy prima facie validity because it fell under scenario three. eCast's proof of claim contained an account number and a statement that the claim was assigned to eCast by General Electric/Lowes. In support of this claim, eCast submitted a Lowes credit card account summary for that particular account and a blanket assignment document showing that a bundle of accounts were transferred from GE Capital Finance, Inc. to eCast. Additionally, the debtor in that case had scheduled a debt due on a Lowe's credit card with the same account number. Applying Judge Houser's framework, Judge Hale concluded that eCast did not produce sufficient evidence to establish prima facie ownership of its claims. *In re Armstrong*, 347 B.R. at 585.

In the case at bar, there is no question that LVNV's original proofs of claim are insufficient to clothe its claims in prima facie validity because no supporting documents were attached to them. However, it is noteworthy that LVNV attached nearly identical documents to its amended proofs of claim to those submitted by eCast in Judge Hale's *Armstrong* case, which Judge Hale determined to be *insufficient* to give rise to prima facie validity. Thus, even if this Court were to grant LVNV's Motion for Leave, LVNV's claims would still not enjoy prima facie validity. Even more noteworthy is that Stromberg, as counsel for eCast, witnessed this result.

> There was no evidence of an "evidentiary link" between Lowe's and GE Capital
> Finance offered by eCast, other than Mr. Stromberg's say so at the hearing, which is
> argument and not evidence. This would not normally end the inquiry, because lack
> of prima facie validity in the face of a valid objection by the Debtor simply shifts the
> burden to eCast to prove its right to payment from the Debtor. However, since eCast
> offered no further evidence at the hearing, the Court finds that eCast has not met its
> burden of proof; and the Debtor's objection to claim number twelve will therefore
> be sustained.

*Id.* (internal citations omitted).

Even though Stromberg's "say so" was insufficient to support his client's evidentiary burden in *Armstrong*, he nonetheless offered it to this Court at the May 21, 2009 hearing to support his contention that LVNV is the current owner and holder of the Debtor's accounts.   Indeed, Stromberg's "say so" was also all that he offered in support of his client's position that valid and enforceable agreements exist between the original claim holders and the Debtor, and that the rights of those original claim holders have been assigned to his client.   Notwithstanding rulings issued against his clients in both *Armstrong* and *Gilbreath*, Stromberg continues to believe that his word will be taken as gospel truth and that oral argument is as good as evidence.   Unfortunately for Stromberg, he is as mistaken in this belief today as he was three years ago in *Armstrong* and last year in *Gilbreath*.

It is equally noteworthy that in the case at bar Stromberg had two opportunities to explain why LVNV could not obtain the documentation required to be attached to its proofs of claim, but he failed to avail himself of either.   First, Form 10 specifically provides that if the documentation supporting the claim is unavailable, "please explain."   Despite these instructions, Stromberg provided no explanation for why LVNV did not attach the requisite documentation to LVNV's original proofs of claim.   Second, at the May 21, 2009 hearing, this Court gave Stromberg an

opportunity to explain why the documents attached to LVNV's untimely amended proofs of claim were initially unavailable, but Stromberg failed to provide any proper explanation—such as adducing testimony from Joyce Montjoy, the Bankruptcy Recovery Manager for Resurgent Capital Services, who prepared and signed all of LVNV's proofs of claim. *See supra* note 4.

Therefore, because LVNV—through Stromberg, its counsel of record—failed to adduce testimony at the May 21, 2009 hearing to explain the reason for the delay in filing its amended proofs of claim, and because the information provided in its amended proofs of claim was available when the original proofs of claim were filed, or, at the very least, ten days before the bar date (when LVNV filed its Response along with supporting documentation), this Court will not grant the Motion for Leave. *See Southmark Corp*, 88 F.3d at 316; *see also Pam Capital Funding LP v. National Gypsum Co. (In re Kevco Inc.)*, 113 Fed. Appx. 29, 31 (5th Cir. 2004) ("The district court does not abuse its discretion by denying a motion to amend where the plaintiff unduly delays in seeking an amendment and offers no explanation for the delay.")   The "undue delay" factor weighs strongly against permitting LVNV to amend its original proofs of claim.

### 2.    Bad Faith or Dilatory Motive

The Fifth Circuit recently defined "bad faith" as "a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive and implies the conscious doing of a wrong because of dishonest purpose or moral obliquity." *Burnsed Oil Co. v. Grynberg*, No. 08-60333, 2009 WL 793015, at *5 (5th Cir. Mar. 25, 2009) (quoting Mississippi law and Black's Law Dictionary).   Additionally, the Supreme Court of Texas has defined "bad faith" as a "wilful disregard of and refusal to learn the facts when available and at hand." *Citizens Bridge Co. v. Guerra*, 258 S.W.2d 64, 69-70 (Tex. 1953).

Thus, this Court should refuse to allow the untimely amendments to LVNV's proofs of claim if LVNV's initial failure to comply with Bankruptcy Rule 3001 by attaching required documents was not prompted by an honest mistake, but was instead due to a willful disregard of available facts or applicable law.

LVNV cannot claim that its initial failure to comply with Bankruptcy Rule 3001 was an honest mistake. LVNV—through Stromberg, its counsel of record—certainly knows that a credit card claimant is required to attach supporting documents to its proof of claim and that this Court requires claimants to obtain leave of Court or consent of the Debtor before amending contested proofs of claim. Stromberg participated at the claim objection hearing in *Gilbreath* and witnessed first hand the potential consequences of failing to comply with Bankruptcy Rule 3001. Indeed, this Court issued written findings of fact and conclusions of law disallowing LVNV's claims in *Gilbreath*. *See* Exhibit A. Further, Stromberg was counsel of record for one of the claimants in the *Armstrong* case, where three Bankruptcy Judges for the Northern District of Texas issued a joint opinion spelling out the specific requirements of Bankruptcy Rule 3001. *See In re Armstrong*, 320 B.R. 97, 103-07 (Bankr. N.D. Tex. 2005) (listing the various types of documents that claimants can attach to their proof of claim to comply with Bankruptcy Rule 3001).

Stromberg's attempt to plead ignorance of this Court's Notice and Order and applicable law falls on this Court's deaf ears. The applicable law of which Stromberg claims not to have been aware until after filing LVNV's original proofs of claim was, in fact, issued with respect to Stromberg's client as early as 2005, in *Armstrong*, and as recently as November of 2008, when this Court ruled against LVNV in the *Gilbreath* case. Further, Stromberg's failure to provide evidence of his client's ownership of its claims is conspicuously noted in Judge Hale's follow-up opinion to

25

*Armstrong* relating to eCast's proofs of claim. *In re Armstrong*, 347 B.R. at 585.

Stromberg has offered no explanation for LVNV's initial failure to comply—or to make even a minimal attempt to comply—with Bankruptcy Rule 3001; nor could he, given his extensive involvement in cases where both LVNV and his other clients had claims disallowed for failing to produce sufficient documentation and evidence in support of their claims. Indeed, Stromberg stated at the May 21, 2009 hearing that "we get the documents as quickly as we can *when we're aware of an objection.*" Thus, by Stromberg's own admission, LVNV made no attempt to comply with Bankruptcy Rule 3001 when filing its original proofs of claim and only deigned to comply with Bankruptcy Rule 3001 after being called out for having violated it. Stromberg's self-professed ignorance of applicable law and this Court's Notice and Order can only be described as "willful ignorance," which constitutes bad faith. *Citizens Bridge Co.*, 258 S.W.2d at 69-70.

LVNV's utter disregard for Bankruptcy Rule 3001's requirements when filing its original proofs of claim amounts to bad faith. This Court will not now permit LVNV to amend its deficient claims after the bar date with documents that it either had, or could have easily obtained, in a timely manner. Thus, the "bad faith or dilatory motive" factor also weighs strongly against permitting LVNV to amend its original proofs of claim.

### 3.    Repeated Failure to Cure Deficiencies

Generally, this factor considers whether a claimant has been given ample opportunity to amend its complaint to cure deficiencies, but has repeatedly failed to cure such deficiencies. *Torch Liquidating Trust*, 561 F.3d at 391; *St. Germain v. Howard*, 556 F.3d 261, 264 (5th Cir. 2009) (upholding a district court's denial of a motion for leave after several opportunities to state a case); *Herrmann Holdings Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 566 (5th Cir. 2002) (affirming a denial

of a motion for leave after an initial complaint and two amendments); *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607-08 (5th Cir. 1998) (affirming denial of a motion for leave after the party had three chances to state a claim). Although courts have typically considered "repeated failure to cure deficiencies" with respect to multiple amendments filed by a party in the context of a particular case, this Court believes that a party's repeated failure to heed a court's prior rulings against it in other proceedings may properly be considered when determining whether to grant that party leave to amend after the deadline has expired. However, even if the "repeated failure" inquiry is limited to the particular proceeding at bar, LVNV's amended proofs of claim still fail to comply with Bankruptcy Rule 3001, *see infra* Part III.C.5, and are insufficient to carry LVNV's burden to prove the underlying validity of its claims by a preponderance of the evidence. *See infra* Part III.D.

As stated below, even if this Court granted LVNV leave to amend its deficient proofs of claim, its amended proofs of claim still fail to comply with Bankruptcy Rule 3001. *See infra* Part III.C.5. Thus, LVNV's amendments fail to cure the deficiencies in its original proofs of claim.

This Court also believes that the repeated failure of LVNV—and its counsel of record, Stromberg—to comply with Bankruptcy Rule 3001 in cases before this Court and the Bankruptcy Court for the Northern District of Texas militate against granting LVNV leave to amend its proofs of claim in the present case. As discussed above, LVNV's total failure to comply with Bankruptcy Rule 3001 in *Gilbreath* ultimately resulted in disallowance of its claims in that case. *See* Exhibit A. Additionally, the failure of Stromberg's client to attach documentation to establish that it was the current owner and holder of the debtor's accounts caused its claims to be disallowed in *Armstrong*. *In re Armstrong*, 347 B.R. at 585.

Because LVNV's amended proofs of claim do not comply with Bankruptcy Rule 3001 and

are insufficient to carry LVNV's burden of proof at this stage of the proceeding, and because LVNV and its counsel of record, Stromberg, have repeatedly failed to comply with Bankruptcy Rule 3001 despite this Court's ruling against LVNV in *Gilbreath*, despite Judge Hale's ruling against Stromberg's client in *Armstrong*, and despite this Court's Notice and Order that is displayed in bold, capital letters on this Court's website, this Court will not grant LVNV leave to amend its deficient proofs of claim in this case. Thus, the "repeated failure to cure deficiencies" factor also weighs against granting LVNV leave to amend.

### 4.   Undue Prejudice

Counsel for LVNV, Stromberg, argued at the May 21, 2009 hearing that LVNV's untimely filing of its amended proofs of claim does not prejudice the Debtor in any way. Specifically, Stromberg argued that "we're in the same spot that we would have been" if LVNV had attached supporting documentation to its original proofs of claim. This Court strongly disagrees. Not only have LVNV's actions prejudiced the Debtor by causing him to incur attorney's fees needlessly; they have wasted the time of both this Court and the Debtor—time which, at least for the Debtor, could have been better spent planning and drafting his Chapter 13 plan of reorganization and moving his bankruptcy case forward.

At the May 21, 2009 hearing, the Debtor argued that LVNV had access to the documentation attached to the amended proofs of claim at the time of the original filing, or soon after, and assuredly before the deadline for filing a proof of claim. The Debtor further asserted that he has incurred substantial attorney's fees and costs in attempting to discover information that LVNV was required to produce along with its original proofs of claim.

In a normal lawsuit, the court inquires whether allowing an amended complaint would cause

undue prejudice by requiring the opposing party to respond to unexpected theories of recovery based on different facts than those originally pled. *See Chitimacha Tribe of La.*, 690 F.2d at 1164. In a bankruptcy case, the question of undue prejudice with respect to allowing untimely amendments to proofs of claim should also take into account whether the Debtor was forced to incur unnecessary expenses due to a creditor's initial failure to comply with Bankruptcy Rule 3001. Indeed, the very purpose of Bankruptcy Rule 3001 is to avoid such unnecessary expenses. *See In re Armstrong*, 320 B.R. at 104 ("The rules rightfully require creditors to attach minimal supporting documentation for their claims so that a debtor can evaluate their validity without discovery or extraordinary expense.").

While LVNV's amended proofs of claim do not allege some alternative and unexpected basis for recovery, LVNV's failure to initially include the documents that it attached to its amended proofs of claim has cost the Debtor $750.00 and has resulted in unnecessary hearings at which the Debtor was forced to incur additional fees and expenses for having his counsel appear. The Court concludes that forcing the Debtor to incur fees and expenses asking for documentation that LVNV was required to produce at the outset constitutes undue prejudice to the Debtor. LVNV's initial failure to comply with Bankruptcy Rule 3001 not only harms the Debtor and reduces the probability that he will be able to propose and maintain payments on a feasible plan of reorganization; it also inures to the detriment of every other unsecured creditor. Every penny the Debtor expends to pay his attorney's priority claim for fees necessarily reduces the amount available to pay general unsecured creditors. "[T]he fact is that debtors in chapter 13 frequently live so close to the line that every penny counts: Every penny that they keep, and every penny that they put toward their plan." *See In re Flauntleroy*, 311 B.R. 730, 739 (Bankr. E.D.N.C. 2004); *see also In re T-H New Orleans Ltd. P'ship*, 116 F.3d 790, 807 (5th Cir. 1997) (noting that the dual aims of bankruptcy are payment

of claims and a debtor's ability to obtain a fresh start).

LVNV's practice of ignoring the requirements of Bankruptcy Rule 3001 by failing to produce documentation to support its claims unless and until it becomes "aware of an objection" causes undue prejudice to the Debtor, all unsecured creditors, and, indeed, the entire bankruptcy system, by requiring unnecessary hearings.[13]  LVNV and Stromberg's disregard for Bankruptcy Rule 3001, which made the late-filed amendments necessary, caused the Debtor to incur unnecessary attorney's fees and depleted the limited pool of funds available for the Debtor to reorganize and pay other creditors. "Lawyers of experience who practice what we boast to be a learned profession owe a duty both to their clients and to the court, and, perhaps, even to other members of their profession who appear as opposing counsel, to prepare cases properly, to give the issues full consideration before preparing pleadings, and, in general, to exercise diligence in the practice of their profession." *Lamar v. Am. Fin. Sys. of Fulton County, Inc.*, 577 F.2d 953 (5th Cir. 1978).

Stromberg's failure to heed this Court's ruling against LVNV in *Gilbreath*, this Court's Notice and Order, and applicable case law from the Northern District which arose from cases in which he was an actual participant, have caused the Debtor to incur considerable costs in objecting to LVNV's woefully deficient proofs of claim and prosecuting those objections at an evidentiary hearing for which Stromberg was unprepared. Therefore, the "undue prejudice" factor also weighs

---

[13]  Stromberg's statement at the May 21, 2009 hearing that he and his client, LVNV, attempt to obtain the documents that Bankruptcy Rule 3001 requires to be attached to a proof of claim only after they become aware of an objection may properly be imputed to his client, LVNV. *See, e.g.*, *Link v. Wabash R.R.*, 370 U.S. 626, 633-34 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney." (internal marks and citations omitted)); *Tolliver v. Northrop Corp.*, 786 F.2d 316, 319 (7th Cir. 1986) ("[A] litigant is bound by his lawyer's acts."). Thus, LVNV, through its counsel of record, Stromberg, has admitted that it willfully withholds the documentation required to be included with its original proofs of claim until the debtor lodges an objection.

against granting LVNV's motion for leave to amend.

### 5.    Futility of the Amendment

A court may deny a party's motion for leave to amend if such an amendment would be futile. *Goldstein v. MCI Worldcom*, 340 F.3d 238, 254-55 (5th Cir. 2003); *see also Callegari v. Thomas*, No. H-06-2843, 2006 WL 3448630, at *8 (S.D. Tex. Nov. 28, 2006) (denying plaintiff's first motion for leave to amend where the plaintiff had not alleged "any additional facts not initially pleaded that could, if necessary, cure the pleading defects"). In *Goldstein*, the court noted that the plaintiffs' awareness of the defendants' objection, coupled with the fact that the plaintiffs had not alleged additional facts that would cure the original pleading's defects, supported the district court's decision to deny leave to amend. *Goldstein*, 340 F.3d at 254-55. Additionally, the Fifth Circuit noted "that the law firm representing the plaintiffs has apparently been previously warned by at least one circuit court against this kind of 'wait and see' approach to requesting leave to amend." *Id.* at 255 n.6. The Fifth Circuit also echoed the Sixth Circuit's frustration about the "cat and mouse" gamesmanship of class action plaintiffs who file defective pleadings and do not move to amend until an objection is raised. *Id.* at 255 n.6 (citing *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002)).

This Court shares the frustration expressed by the Fifth and Sixth Circuits. This Court believes that LVNV—like the plaintiffs in *Goldstein*—filed its deficient original proofs of claim without any intention of amending to include the documentation required by Bankruptcy Rule 3001 unless the Debtor lodged an objection. Indeed, LVNV's counsel of record, Stromberg, conceded at the May 21, 2009 hearing that his client and he make no attempt to obtain the documentation required to be attached to proofs of claim under Bankruptcy Rule 3001 until "we're aware of an objection." [Finding of Fact No. 16.] Thus, by Stromberg's own admission, his client and he make

31

a regular practice of engaging of the sort of "wait and see" approach and gamesmanship denounced by the Fifth Circuit in *Goldstein*.

Additionally, as in *Goldstein*, LVNV's amended proofs of claim are futile. First, as this Court expressed at the May 21, 2009 hearing, the documents attached to LVNV's amended proofs of claim are insufficient to clothe LVNV's claims with prima facie validity. The first assignment documents attached to LVNV's amended proofs of claim—all of which are virtually identical—merely convey that "subject to the terms and conditions of the Purchase and Sale Agreement," Sherman Originator LLC purchased certain "Accounts described in Section 1.2 of the Agreement" from Citibank. [Findings of Fact No. 11-14.] The second assignment documents attached to LVNV's amended proofs of claim—all of which, again, are virtually identical—purport to transfer "in accordance with the provisions of the Sale Agreement," certain "Receivable Assets (as defined in the Agreement) identified on the Receivable File" between Sherman Originator LLC and LVNV. [Findings of Fact No. 11-14.] Additionally, although LVNV saw fit to submit a smattering of invoices indicating that certain accounts in the Debtor's name were charged for various amounts in 2005 and 2006, none of these invoices reflect the amounts claimed by LVNV in its amended proofs of claim.

Based on these documents, LVNV urges this Court, the Debtor, and, indeed, every other unsecured creditor or party-in-interest to presume (a) that the Debtor's accounts were among the bundle of accounts (twice) transferred, (b) that the accounts in question are based on valid and enforceable contracts between the Debtor and the original account holder, and (c) that the amounts claimed by LVNV in its amended proofs of claim 12 through 15 are the correct amounts owed by the Debtor despite the fact that none of the invoices provided by LVNV reflect an account balance

in those amounts. This Court will not make any of these presumptions. In order to comply with Bankruptcy Rule 3001 and avail its claims of prima facie validity, it was incumbent on LVNV to provide "an account statement containing the debtor's name, account number, the prepetition account balance, interest rate, and a breakdown of the interest charges, finance charges and other fees that make up the balance of the debt, or attach enough monthly statements so that this information can be easily determined." *In re Armstrong*, 320 B.R. at 106. Additionally, because LVNV purports to be the second assignee of the Debtor's accounts, it was required to "document its ownership of the claim" and produce "a signed copy of the assignment and sufficient information to identify the original credit card account." *Id.* (quoting *In re Hughes*, 313 B.R. 205, 212 (Bankr. E.D. Mich. 2004)).

Because LVNV's amended proofs of claim fail to satisfy the requirements of Bankruptcy Rule 3001, its late attempt to amend its proofs of claim is futile. Therefore, the "fultility" factor also weighs against granting LVNV's motion for leave to amend its proofs of claim.

In sum, all five factors that may properly form the basis for a trial court's decision to deny a party leave to amend pursuant to Rule 15 are present in this case. Notably, only one of these factors would have provided sufficient grounds for this Court to refuse to grant LVNV's Motion for Leave. Thus, this Court concludes that the Motion for Leave should be denied. The consequence of this ruling is that LVNV's claims are not prima facie valid, and that LVNV bears the burden of proving the validity of its claims by a preponderance of the evidence under Texas law. In order to meet this burden, LVNV must rely on its original proofs of claim and any evidence adduced at the May 21, 2009 hearing.

**D.      Validity of LVNV's Claims 12 Through 15**

33

While the question of whether LVNV's claims are allowable in bankruptcy "is a matter of federal law and the bankruptcy court's exercise of equitable powers," the underlying validity of LVNV's claims is based on Texas contract law. *See First City Beaumont v. Durkay (In re Ford)*, 967 F.2d 1047, 1050 (5th Cir. 1992). Therefore—because the Debtor's Objections shifted the burden to LVNV to prove the underlying validity of its claims by a preponderance of the evidence—LVNV now has the burden of proving the validity of its claims under Texas law, which requires proof that: (1) enforceable credit card agreements exist between the Debtor and the original account holders; and (2) LVNV is the current owner and holder of any rights under such agreements.

For a contract to be enforceable under Texas law, a creditor must produce evidence of the contract under which a debtor is allegedly liable. *See Preston State Bank v. Jordan*, 692 S.W.2d 740, 744 (Tex. App.—Fort Worth 1985, no writ). In order to prove the existence of an enforceable credit card agreement, the claimant must produce the agreement or prove up the agreement's material terms. *See, e.g., McElroy v. Unifund CCR Partners*, No. 14-07-00661-CV, 2008 WL 4355276, at *9-10 (Tex App.—Houston [14th Dist.] Aug. 26, 2008, no pet.) (determining that evidence of the debtor's signature card along with thirteen monthly account statements were insufficient to prove the existence of a contract without admitting the cardholder agreement or some other document describing its terms); *Williams v. Unifund CCR Partners*, 264 S.W.3d 231, 236 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (determining that the claimant did not adduce sufficient evidence to establish the existence of a valid and enforceable credit card agreement as a matter of law because the claimant "did not produce the actual agreement or any other document that established the agreed terms, including the applicable interest rate or the method for determining the applicability and amount of finance charges"); *Preston State Bank*, 692 S.W.2d at 743-44 (holding

that appellant/claimant failed to prove the existence of a valid and enforceable credit card agreement where "appellant failed to produce any evidence of a contract agreement under which appellee was allegedly liable to it"). Texas law also requires an alleged assignee of a contract to come forward with evidence of the assignment. *See Skipper v. Chase Manhattan Bank USA, N.A.*, No. 09-05-196 CV, 2006 WL 668581, at *1 (Tex. App.—Beaumont, 2006, no. pet.) (citing cases).

At the May 21, 2009 hearing, LVNV admitted exhibits in support of its proof of claim. [Finding of Fact No. 16.] Those exhibits consist entirely of the documents attached to LVNV's amended proofs of claim. The Court specifically notes that LVNV did not offer into evidence the documents attached to its Response, which consist of selected pages from the Debtor's Schedule F, the two assignment documents in support of each claim that were attached to LVNV's amended proofs of claim, and four documents that appear to be computerized spreadsheet printouts containing a list of account numbers, including those accounts which LVNV contends it presently owns and which form the basis for LVNV's claims. As the Bankruptcy Court for the Northern District of Indiana very recently explained,

> Documents attached to legal briefs, or documents which are merely filed on the court's docket record, do not constitute evidence concerning a matter before the court unless those documents are specifically made a part of an evidentiary record applicable to a particular proceeding. This is true regardless of the independent admissibility of those documents as established by the submission by which those documents were sought to be placed before the court. Apart from failure to make a record by appropriate means, documents which lack a foundation for admissibility add nothing to the mix.

*In re Watson*, 402 B.R. 294, 297 (Bankr. N.D. Ind. March 11, 2009); *see also In re Reyna*, No. 08-10049-CAG, 2008 WL 2961973, at *6 (Bankr. W.D. Tex. July 28, 2008) ("Roundup Funding presented no evidence to support its claim. Its information was submitted in the form of a response

with attached exhibits, all in the nature of argument, and not by affidavit or by witness testimony."). Accordingly, because the documents attached to LVNV's Response are not evidence, this Court may not consider them.

As discussed above, *supra* Part III.C.5, the documents attached to LVNV's amended proofs of claim are insufficient to meet even the minimal requirements set forth in Bankruptcy Rule 3001. If these documents are insufficient to notify Debtors of the basis for the claims and to document that LVNV is the current owner and holder of the claims asserted, they cannot possibly satisfy LVNV's steeper evidentiary burden of proving the validity of its claims by a preponderance of the evidence. As discussed above, the documents submitted by LVNV only reflect that Citibank sold Sherman Originator LLC a bundle of accounts described in some "Purchase and Sale Agreement," which LVNV has not produced, and that Sherman Originator LLC turned around and sold LVNV a number of "Receivable Assets" identified on some "Receivable File," which has also not been produced. [Findings of Fact No. 11-14, & 16.] Additionally, none of the invoices submitted by LVNV in support of its claims reflect that the Debtor owes the amounts asserted by LVNV in Claims 12 through 15. Based on these documents, the Court cannot determine: (a) whether the Debtor owes the amounts sought by LVNV; (b) whether LVNV is, in fact, the current owner and holder of the accounts in question; or (c) whether those credit card accounts are based on valid and enforceable agreements, as required by Texas law.

LVNV has wholly failed to prove that valid and enforceable credit card agreements existed between the Debtor and the original account holders—or to prove the material terms of any such agreements—and has also failed to prove that LVNV is the current owner and holder of the Debtor's accounts. Thus, LVNV, once again, has fallen woefully short of meeting its burden of proving the

validity of its claims by a preponderance of the evidence. Because it has failed to do so, this Court concludes that the Debtor's Objections should be sustained and that LVNV's claims should be disallowed.

## IV. CONCLUSION

This Court previously used the term "willful ignorance" to describe the position taken by LVNV and its counsel of record, Stromberg, in this case, but this term is a generous assessment of this attorney and his client's outlook with respect to filing proofs of claim. A more apt description of Stromberg and LVNV's actions in this case is "deliberate malfeasance." Stromberg's former client was a party in the watershed *Armstrong* case, which dealt exclusively with the filing requirements for proofs of claim, and which was issued by three esteemed Bankruptcy Judges for the Northern District of Texas in 2005. Even more noteworthy is the fact that Stromberg's client in that case, eCast, had one of its claims disallowed for the very same reason that LVNV's claims were disallowed in the *Gilbreath* opinion issued by this Court in November of 2008. Despite his extensive and direct involvement with issues relating to Bankruptcy Rule 3001 as early as 2005 and as recently as November of last year, Stromberg represented to this Court at the May 21, 2009 hearing that his client and he make no attempt to comply with Bankruptcy Rule 3001 unless and until an objection is filed. Thus, it appears that Stromberg and his client have a standing policy which involves willfully violating Bankruptcy Rule 3001 because it is cost-effective to do so.

This practice, which has been adopted by Stromberg and LVNV despite their undeniable awareness of applicable law, cannot be allowed to continue. It is clear to this Court that Stromberg and LVNV are content to rest on their grossly deficient proofs of claim in the hope that debtors will overlook their violation of Bankruptcy Rule 3001. Apparently, this approach has proven cost

effective thus far.  However, because the Debtor in this case caught onto LVNV's ruse and because this Court has already taken LVNV to task for a substantially similar failure in a prior case, LVNV will not only suffer disallowance of its claims, but Stromberg, as an officer of this Court, will be made to answer for his flagrant disregard for Bankruptcy Rule 3001, this Court's Notice and Order, and applicable law.

For the reasons set forth above, this Court concludes that the Debtor's Objection should be sustained, LVNV's Motion for Leave should be denied, and LVNV's Claim Numbers 12, 13, 14, and 15 should be disallowed.  Additionally, Stromberg will be required to appear and show cause why he should not be sanctioned for repeatedly violating Bankruptcy Rule 3001, for failing to comply with this Court's procedures, as conspicuously set forth on this Court's website, and for willfully disregarding applicable case law in which he, himself, represented a party who had its claims disallowed for failing to produce sufficient supporting documentation.  An order consistent with this Memorandum Opinion will be entered on the docket simultaneously with the entry of this Opinion.

Signed on this 26th day of June, 2009

Jeff Bohm
United States Bankruptcy Judge